No. 33,158

GEORGE ROUSE, *Appellee*, v. L. A. WALKER, *Appellant*.

(64 P. 2d 47)

Opinion filed January 23, 1937.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellant.

*C. E. Carroll* and *A. E. Carroll,* both of Alma, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for assault and battery. Plaintiff recovered judgment, and defendant appeals.

Defendant resides on a farm about 2½ miles from Harveyville. He is past 70 years of age. Formerly he was a physician, but retired from the practice of his profession about twenty years ago, and has since engaged in farming and stockraising. He is still called Doctor Walker in that community.

Plaintiff is a farm laborer, 62 years of age. At the time of present concern, and for some 22 months previously, he had been working for the defendant at $18 per month.

On the forenoon of March 31, 1935, plaintiff and defendant rode to Harveyville in a spring wagon drawn by a team of horses which were inclined to run away. In town both men pursued their individual errands until about 4 p. m., when they started for home. Plaintiff drove the team, but he did not drive to suit his employer and the latter grabbed one of the reins and referred to plaintiff as some sort of a fool. Plaintiff handed the other rein to defendant, saying, "They are your horses, drive them to suit yourself." Plaintiff testified:

" '[Then] he called me a bastard and that is when I hit him . . . he said he didn't want no more and I quit right there. This was on the road home

from Harveyville. We got out of the spring wagon. He walked around and said, 'I will give you to understand that I am not licked yet' . . . and he got a board and said, 'I will beat your — head off.'"

On cross-examination plaintiff testified:

"Q. You didn't swear that day, did you? A. I might have, I don't say I did or I didn't.

"Q. You were pretty angry, were you not? A. I was, yes.

.    .    .    .    .    .    .    .    .    .    .    .    .

"When he called me a bastard that made me angry and I hit him with my right hand, hit him with my fist in the face, I couldn't say what part of the face, but I know I hit him in the face.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. You hit him as hard as you could, didn't you? A. We will say yes."

When the two men arrived at the farm, and got off the wagon, defendant hit plaintiff over the head with a board and broke his arm.

This action followed. Plaintiff pleaded the alleged facts and itemized certain consequent expenses for medical services, for care and nursing, and damages for loss of time and for pain and suffering, and prayed judgment therefor, and likewise for punitive damages.

Defendant's answer contained a general denial, and alleged that plaintiff's injuries were the result of a blow defendant had delivered in his own defense, and that prior thereto plaintiff had attacked and assaulted the defendant.

The cause was tried at length. The jury returned a verdict for $3,345, and answered special questions thus:

"1. Did the plaintiff commit an unlawful assault and battery upon the defendant after leaving Harveyville and before the parties arrived at the farm of the defendant? A. Yes.

"2. If your verdict should be for the plaintiff, then state what damage, if any, you allow the plaintiff for—

"(a)   Medical services and medicine.................A.   $100
"(b)   Loss of time..................................A.   450
"(c)   Care and nursing.............................A.   420
"(d)   Pain and suffering...........................A.   1,125
"(e)   Punitive damages ...........................A.   1,250."

Defendant filed a motion for a new trial on all the statutory grounds. When this motion came on for hearing, counsel for plaintiff conceded that the evidence would not sustain certain of the items allowed by the jury which were included in their verdict, and that some of those items should be reduced thus:

Medical services and medicine, reduced from.......$100 to  $45
Loss of time, reduced from........................$450 to $200
Care and nursing, reduced from........ ..........$420 to  $65

On these concessions by plaintiff's counsel, the trial court overruled defendant's motion for a new trial and gave judgment for plaintiff in the sum of $2,705, itemized as follows:

"Medical services and medicine............................ $45
Loss of time............................................. 220
Care and nursing......................................... 65
Pain and suffering....................................... 1,125
Punitive damages ........................................ 1,250."

Defendant first complains of the overruling of his preliminary motion that plaintiff should be required to make his petition more definite and certain in several particulars—that he specify what injuries he sustained in the alleged assault; to whom he was compelled to pay the alleged sum for medical and surgical services and medicine; what his earnings were prior to his alleged injuries and what loss of time he was occasioned thereby; and to whom he was obligated to pay $420 for care and nursing.

In view of the concessions of counsel for plaintiff, on the motion for a new trial, it is rather apparent that it would have served the best interests of both parties to this lawsuit if that motion had been sustained, particularly as to the specific monetary items referred to in plaintiff's petition. But the trial court has a wide discretion in respect to such matters and this court is unable to say that the overruling of that motion was prejudicially erroneous.

Defendant next contends that the verdict disclosed bias and prejudice on the part of the jury sufficient to vitiate it, and that the conceded reductions did not cure its infirmities. There was indeed no basis for any of the itemized figures as allowed by the jury except the one for pain and suffering which, of course, was a matter largely within its discretion when approved by the trial court. On the $100 item allowed for medical services and medicine, plaintiff's witness, who was the doctor who treated him, testified that the fair value of his services was $35 and that the X-ray service was worth from $7.50 to $15. There was no evidence to the contrary. On the item of $450 for loss of time, it was conceded that the evidence did not support such finding and that item should be cut to $220. So reduced, the court approved it. We find no evidence to support the latter figure. Plaintiff's wages as a farm hand were $18 per month. The assault and battery and consequent damage occurred on March 31, 1935. Assuming that plaintiff was incapacitated until he commenced to work on July 4, according to his own testimony,

the total duration of his loss of time was 95 days or 3 months and one week. His earning capacity had been $18 per month. Consequently his damages for loss of time did not exceed $58.50.

In respect to the jury's allowance of $420 for care and nursing, plaintiff's counsel offered to remit $200 on that item, saying,

"I think there is a mistake in that, I don't believe the testimony justified giving us that, quite that amount of money, and in order to keep within the evidence, as it was given here, and have no question about it, as we view it, we offer to remit $200 of that item. . . ."

The trial court, however, cut that item to $65, and it is not easy to discern any evidence to sustain the latter sum, unless it is to be inferred from plaintiff's testimony that he made his home with his sister while he was incapacitated and that it was worth $5 per week for his care and keep at her house.

Touching the jury's allowance of $1,250 for punitive damages, counsel for the appellee would sustain that item on the unique ground that whereas plaintiff asked for $5,000 as punitive damages the jury only allowed $1,250, from which fact it is argued that any objection to this item is untenable. If this court should give its assent to such an argument, there would be an end to the correction of excessive verdicts by the simple device of pleading and praying for some extravagant sum which no jury would ever allow. As we read this record we think the facts do not warrant any award of punitive damages. Within the short time it would take defendant's team of horses to travel 2½ miles, defendant's blood did not have much time to cool after the devastating blow in the face the plaintiff dealt him; and while defendant had no legal right to retaliate, and was properly held liable for damages for the actual injuries he inflicted on plaintiff, no tenable ground for an award of punitive damages was warranted by the circumstances—even giving plaintiff's version of the incidents the largest credence.

In view of the foregoing, what disposition should be made of this case? Counsel for appellee cite cases where we have permitted excessive verdicts to be corrected and have permitted the judgments based thereon to be modified and then affirmed. There are several incidents portrayed in this record which would not permit such a disposition of the pending case. One of the errors assigned pertains to misconduct of counsel, who persistently sought to prove or insinuate that defendant was a man of violence and had been such a person for 30 or 40 years. The trial court's mild rulings against such an unreasonable range of inquiry were quite insufficient to curb

the zeal of plaintiff's counsel. On cross-examination of defendant the record reads:

"Q. You know a man by the name of Lee Austin? A. Yes.

"Q. Didn't draw a club on Lee Austin, did you? A. Well, that has been 38 years ago, we had some trouble.

"[Counsel for defendant]: If that is 38 years ago, I will ask to have it stricken out.

"[Counsel for plaintiff]: If the court please, we are showing a chain of events, to show this man's past, to show the trouble he has been into.

"Q. Did you ever have your arm broken, one or both arms broken?

"[Counsel for defendant]: We object as not proper cross-examination.

"[Counsel for plaintiff]: He and his wife got in a fight and broke an arm with a beer bottle, and she knocked him down the stairway.

"The Court: Domestic trouble, I don't think, has anything to do in this case, and the jury is admonished to disregard the statement of counsel; whether true or false, it doesn't matter, I don't think.

"[Counsel for plaintiff]: I should think it would be competent, going to his credibility as a witness, just as these other questions we have been asking."

There are other instances in the record which show that counsel for plaintiff, and not the court, had the last word.

On the whole record it is clear that defendant did not have a fair trial, and that the net result could not be corrected by the reduction of the verdict made by the trial court, nor by a further remittitur by this court.

· The judgment is reversed and the cause remanded for a new trial.